2013 ND 182

**STATE of North Dakota, Plaintiff and Appellant**

v.

**Korsiba AROT, Defendant and Appellee.**

**No. 20120379.**

Supreme Court of North Dakota.

Oct. 22, 2013.

Ryan J. Younggren, Assistant State's Attorney, Fargo, ND, for plaintiff and appellant.

Benjamin C. Pulkrabek, Mandan, ND, for defendant and appellee.

VANDE WALLE, Chief Justice.

[¶ 1] The State of North Dakota appealed from a district court order dismissing charges against Korsiba Arot for lack of jurisdiction. We affirm.

I.

[¶ 2] Arot was charged in district court with three counts of gross sexual imposition for incidents that occurred in the summer of 2011, the latest of which occurred on August 24, 2011. Arot moved to dismiss the criminal charges arguing the court lacked jurisdiction to hear the case because Arot was not eighteen at the time of the incidents. Attached to the motion was an affidavit from Arot's father. The affidavit stated that Arot and his family are refugees who immigrated from Sudan in 2004. Arot was born in southern Sudan in the village of Juba. When they arrived in the country, the family had no documentation of their birth dates. Each member of the family was assigned an arbitrary birth date. In Arot's case, it is January 1, 1993. The affidavit also stated Arot's birthday was in late summer of 1993, and his father knew it was late summer because it was the dry season. Arot also submitted an exhibit showing dry season in Sudan begins in September in the north

and moves south so it covers the whole country by the end of December. The State resisted the motion, and a hearing was held.

[¶ 3] At the hearing, the State presented three witnesses. First, the State called Dawn Peters, Arot's juvenile probation officer. She testified to several documents from the juvenile court on which Arot's birthday is listed as "1/1/1993." These documents were filled out by either Arot or one of his parents. She also testified on cross-examination that many of her immigrant clients from Sudan, Ethiopia, and Somalia have a January 1 birthday.

[¶ 4] The State also called Vanessa Boehm, Arot's high school counselor. She testified to several documents filled out by Arot or his parents where his birthday is listed as "1/1/1993." Additionally, Boehm testified that she held a "senior conference" with Arot in late September 2011. His parents did not attend. She stated that if he had not been eighteen, the meeting would not have been held without his parents. She testified that Arot told her he was eighteen, so she could conduct the meeting without his parents. Boehm also testified that many students who immigrated from places like Sudan have a January 1 birthday, and that as far as she knew, the birthday was arbitrarily assigned.

[¶ 5] The State's final witness was Christopher Novak, a manager from Mexican Village, where Arot worked. Arot was hired on April 17, 2011. Novak testified to several exhibits, including a job application, a copy of Arot's driver's license, and an I–9 form, where Arot wrote that his birthday was "1/1/1993." Novak testified that Arot was not required to be eighteen to work at Mexican Village. Novak did not testify that Arot claimed to be eighteen. Novak also testified that in his experience it was common for immigrants to have a January 1 birthday.

[¶ 6] Arot's father was available for cross-examination on his affidavit, but the State declined to cross-examine him. The district court found the State failed to prove by the preponderance of the evidence that Arot was eighteen at the time of the incidents. The charges were dismissed.

II.

[¶ 7] "The juvenile court has exclusive original jurisdiction of . . . [p]roceedings in which a child is alleged to be delinquent, unruly, or deprived." N.D.C.C. § 27–20–03(1)(a). " 'Child' means an individual who is . . . [u]nder the age of twenty years with respect to a delinquent act committed while under the age of eighteen years." N.D.C.C. § 27–20–02(4)(b). "When jurisdictional facts are disputed, the district court's decision on subject matter jurisdiction necessarily involves findings of fact and conclusions of law. Therefore, when disputed facts surround a challenge to the district court's subject matter jurisdiction, we are presented with a mixed question of law and fact." *Schirado v. Foote*, 2010 ND 136, ¶ 7, 785 N.W.2d 235. "Under this standard, we review the 'questions of law subject to the de novo standard of review [and the] findings of fact subject to the clearly erroneous standard of review.' " *Id.* (quoting *Wigginton v. Wigginton*, 2005 ND 31, ¶ 13, 692 N.W.2d 108). In this case, there are questions of fact and questions of law. "A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence exists to support it, or if, upon review of the entire record, this Court believes a mistake has been made." *Wigginton*, at ¶ 8.

[¶ 8] This Court has stated that "the standard of proof denominated as

proof beyond a reasonable doubt is inapplicable to waiver of jurisdiction proceedings because it applies in the context of a criminal trial and not to the initial stages of the criminal process." *Interest of A.D.L.*, 301 N.W.2d 380, 384 (N.D.1981). While the standard of proof for waiver is set by statute, the same principle generally applies to the initial determination of jurisdiction. *See* N.D.C.C. § 27–20–34(1)(c)(4). The determination is not one of guilt or innocence, requiring a proof beyond a reasonable doubt, but whether the district court has the power to act. Notably, the majority of courts who have confronted this issue have held that the correct standard of proof is preponderance of the evidence. *See United States v. Salgado–Ocampo*, 50 F.Supp.2d 908, 909 (D.Minn. 1999); *State v. Ali*, 806 N.W.2d 45, 54 (Minn.2011); *but see State v. Mohamed*, 178 Ohio App.3d 695, 899 N.E.2d 1071, 1073 (2008) (finding the State must prove venue beyond a reasonable doubt). Therefore, the district court correctly required the State to prove Arot's age by the preponderance of the evidence.

[¶ 9] The State argues the district court clearly erred by finding the State did not prove by a preponderance of the evidence that Arot was eighteen years of age at the time of the alleged offenses. To prove that Arot was eighteen at the time of the incidents, the State offered various documents from Arot's school, work, and the juvenile court filled out or signed by Arot that showed his date of birth as "1/1/1993." It is virtually undisputed, however, that "1/1/1993" is not Arot's actual date of birth. The State concedes that "1/1/1993" was assigned as Arot's birthday when he immigrated to the United States because his parents did not have records of his actual date of birth. Further, all three of the State's witnesses confirmed that it was quite common for an immigrant to have an arbitrary date of birth like Arot's. School records submitted at the hearing show that two of Arot's siblings have a January 1 birthday.

[¶ 10] To rebut the State's evidence that Arot's birthday is "1/1/1993," Arot's father submitted an affidavit stating Arot was born in the late summer of 1993, placing his eighteenth birthday after the dates of the alleged offenses. The State argues the affidavit was unreliable and self-serving because Arot translated for his father. Arot's father was available for cross-examination, however. The State could have asked him about the contents of the affidavit to determine whether Arot misinterpreted anything, or to clarify exactly when Arot was born. The State chose not to cross-examine Arot's father. Under the "clearly erroneous" standard of review, this Court will not re-weigh evidence or reassess the credibility of witnesses. *See Hammeren v. Hammeren*, 2012 ND 225, ¶ 8, 823 N.W.2d 482. The State failed to successfully rebut this evidence. The State presented no evidence that Arot was eighteen at the time of the incidents except the documents showing "1/1/1993."

[¶ 11] The district court found that the State had not met its burden in part because the State had not presented any admissions by Arot that he was eighteen prior to the dates of the alleged offenses. The State argues the district court should not have restricted consideration of Arot's admissions of age to those admissions made before the alleged dates of the offenses. But, Arot's affirmation to his high school counselor that he was eighteen did not occur until about two months after the alleged crimes. Arot affirmed that he was eighteen at the time of that meeting, not two months before. Therefore, the State could only show he was eighteen at the time of Arot's admission, not at the time of

the alleged offenses. An admission that he was eighteen before the offenses would have rebutted Arot's father's affidavit that Arot did not turn eighteen until after the dates of the offenses.

[¶ 12] The State argues that Arot has adopted "1/1/1993" as his date of birth because it is listed on his official documents and he uses it on various official forms. This evidence, however, is inconclusive. Arot was simply reciting the birthday assigned to him by the United States on his immigration documents. Arot could not leave the space blank, and entering any other birthday would presumably lead to problems because it would not match his immigration documents. The State is apparently asking this Court to apply an irrebuttable presumption that the date of birth on his government-issued documents is his actual date of birth. We refuse to do so. While Arot remains a non-citizen, legal permanent resident, there is no procedure in North Dakota for him to correct his official date of birth. *See* N.D.C.C. § 32–37–01 ("Any citizen of the United States, either natural born or naturalized, may maintain a proceeding ... for the purpose of having a judicial determination of the date and place of the person's birth."). There is a procedure for Arot to correct his date of birth on his immigration documents, but he has no documentation of his actual date of birth required to make such a correction. *Application to Replace Permanent Resident Card*, USCIS Form I–90. An irrebuttable presumption that the date of birth on an immigrant's official documents is the actual date of birth would necessarily result in children who are subject to the jurisdiction of the juvenile courts being tried in district court. This is inconsistent with stated public purposes of the Uniform Juvenile Court Act, specifically, "to remove from children committing delinquent acts the taint of criminality and the consequences

of criminal behavior and to substitute therefor a program of treatment, training, and rehabilitation." N.D.C.C. § 27–20–01(2).

## III.

[¶ 13] We affirm the district court order dismissing the case for lack of jurisdiction.

[¶ 14] CAROL RONNING KAPSNER, MARY MUEHLEN MARING, and DANIEL J. CROTHERS, concur.

SANDSTROM, Justice, concurring specially.

[¶ 15] Admittedly, this case deals with an issue apparently seldom confronted by the courts in this country—the disputed date of birth of an immigrant. Although there is some contrary authority, the majority relies on a single, rather recent decision of a federal trial court and a recent Minnesota Supreme Court opinion to resolve the issue by a pre-trial motion to dismiss with the issue to be decided by a judge's finding by a preponderance of the evidence.

[¶ 16] I believe looking to the two recent non-North Dakota decisions is inappropriate because it is inconsistent with our longstanding North Dakota caselaw limiting the scope of a motion to dismiss to the sufficiency of the charging document on its face. *See State v. Howe*, 247 N.W.2d 647 (N.D.1976). But neither party raises the issue on appeal. Both argue preponderance of the evidence. Therefore, I would hold that the district court did not err in deciding the question on the basis of the standard argued by the parties. The majority's statement of the standard for purposes of any future cases is non-controlling dicta. If a similar case arises in the future, the parties would be

free to argue what I believe to be the correct standard.

[¶ 17] I would conclude that probable cause is the proper standard to establish age at the time of the alleged offenses for the purpose of the case proceeding to trial and that the motion to dismiss was not proper.

[¶ 18] This is the review of the grant of a motion to dismiss a criminal case. Curiously, the majority's jurisdictional analysis is based on civil cases and fails to consider our clear criminal caselaw going back more than three decades that "a motion to dismiss is to test the sufficiency of the information or indictment. It is not a device for summary trial of the evidence, and facts not appearing on the face of the information cannot be considered." *Howe*, 247 N.W.2d at 652.

[¶ 19] The majority says, at ¶ 8, the same principle for waiver of a juvenile court's jurisdiction generally applies to the initial determination of jurisdiction in district court. The standard of proof for waiver is well-established:

> Under N.D.C.C. § 27–20–34(1)(b), a juvenile court shall transfer jurisdiction to the district court when the alleged delinquent act involves gross sexual imposition if the juvenile court determines there is probable cause to believe the juvenile committed the offense. . . .

*In re R.A.*, 2011 ND 119, ¶ 6, 799 N.W.2d 332.

[¶ 20] If, as the majority claims, the same principle for waiver applies to initial determinations of jurisdiction, then the standard of proof for jurisdiction is probable cause. Instead, the majority, at ¶ 8, undermines its own proposed principle, opting to follow certain cases which conclude the State has the burden of proving, by a preponderance of the evidence, the defendant's age on the date of the offense.

[¶ 21] This Court has never explicitly articulated the standard of proof required to establish jurisdiction in a criminal case. A thorough examination of the standards of proof required to establish criminal jurisdiction in federal court, as well as other states, ultimately yields one of two possible approaches. The first approach allows an individual to raise infancy as a jurisdictional defect which, if proven by a preponderance of the evidence, will require a trial court to dismiss the case for lack of jurisdiction. This is the approach adopted by the majority. The other view is more consistent with our own caselaw, and is likewise more in line with the majority's reasoning. This second view vests criminal subject matter jurisdiction in the trial court upon the filing of the criminal complaint and a finding of probable cause.

[¶ 22] In this case, the magistrate had previously issued an arrest warrant, which required a probable cause finding. *See* N.D.R.Crim.P. 4 ("If it appears from the complaint . . . that there is probable cause to believe that a criminal offense has been committed by the defendant, the magistrate must issue an arrest warrant to an officer authorized by law to execute it."). In addition, he waived his preliminary hearing and the opportunity to have probable cause reviewed. Therefore, probable cause that Arot committed the crimes of gross sexual imposition had already been established prior to his motion to dismiss, binding Arot over for trial in the district court. Arot nevertheless moved to dismiss in the district court, claiming he was not eighteen years old when the alleged crimes were committed. The law establishing probable cause as the standard of proof and invoking subject matter jurisdiction upon the filing of the complaint in criminal cases has been explicitly established in a number of jurisdictions. "[T]he first judge . . . determined . . . that probable cause

existed for appellee's arrest. Appellee became subject to the trial court's jurisdiction upon the issuance of the arrest warrant." *State v. Ballone,* 422 So.2d 900, 901 (Fla.Dist.Ct.App.1982). "The circuit court's subject-matter jurisdiction attaches when the complaint is filed. The circuit court lacks criminal subject-matter jurisdiction only where the complaint does not charge an offense known to law. Once criminal subject-matter jurisdiction attaches, it continues until a final disposition of the case." *State v. Aniton,* 183 Wis.2d 125, 129–30, 515 N.W.2d 302 (Wis.Ct.App. 1994) (citations omitted). "The trial court lacked valid subject matter jurisdiction where a felony complaint was never filed and Petitioner was bound over for trial without probable cause, absent any filing of a complaint[.]" *Edwards v. McQuiggin,* 2:08–CV–303, 2011 WL 7440951 (W.D.Mich. July 8, 2011).

[¶ 23] Some cases go even further, specifically holding that criminal subject matter jurisdiction will last until trial once it has been established through probable cause:

> Based upon this evidence the military judge made specific findings of fact: (1) that the security policeman at the gate had probable cause to believe that the accused had committed an offense under the Uniform Code of Military Justice; ... and established jurisdiction under the provisions of Article 2(1), Uniform Code of Military Justice; (4) that jurisdiction over the offense attached at the time of the apprehension and continued until trial....

*U.S. v. Bailey,* 11 M.J. 730, 734 (A.F.C.M.R.1981).

[¶ 24] The holdings of this Court are consistent with other states which establish the principle that a magistrate's probable cause findings determine jurisdiction:

> The court or judge is not, in such cases, to sit as a court of review, to determine the sufficiency of the evidence as respects the guilt or innocence of the accused, but to inquire whether the proceedings are without jurisdiction, or the determination of the magistrate unsupported by evidence. His judgment in the premises, upon the evidence, must stand, if there is evidence reasonably tending to support it.

*State ex rel. Styles v. Baeverstad,* 12 N.D. 527, 97 N.W. 548, 550 (1903) (quotation omitted). This case tells us that probable cause is enough to establish jurisdiction in the district court.

[¶ 25] Probable cause is more consistent with existing North Dakota caselaw than a preponderance of the evidence standard. Although the standard of proof for establishing criminal jurisdiction in the trial court has not been conclusively determined in this state, the standard of proof for similar scenarios is probable cause. *See, e.g., Heick v. Erickson,* 2001 ND 200, ¶ 8, 636 N.W.2d 913 ("The court applied the facts, as supported by the evidence introduced at the preliminary hearing, and found there was probable cause to bind over Heick for trial."); *Hinkel v. Racek,* 514 N.W.2d 382, 383 (N.D.1994) ("A magistrate exceeds his or her jurisdiction when the magistrate bases a finding of probable cause that a defendant committed the alleged offense on no evidence or on irrelevant evidence."); *In Interest of T.M.,* 512 N.W.2d 441, 443 (N.D.1994) (" '[R]easonable grounds' [is] the standard for waiver of jurisdiction and transfer of the offense from juvenile court. 'Reasonable grounds' is equivalent to 'probable cause.' "). The majority states, in ¶ 8: "[T]he same principle [of waiver] generally applies to the initial determination of jurisdiction."

[¶ 26] Infancy is an issue better raised at trial, where conflicting evidence is more

properly developed, than in a motion to dismiss. "[T]he purpose of a motion to dismiss is to test the sufficiency of the information or indictment. It is not a device for summary trial of the evidence, and facts not appearing on the face of the information cannot be considered." *Howe*, 247 N.W.2d at 652. Requiring proof of age by a preponderance of the evidence is inconsistent with the principles of this Court and with the abundance of caselaw requiring only probable cause to establish jurisdiction for criminal trial.

[¶ 27] The criminal complaint filed in district court invoked criminal subject matter jurisdiction, and there was probable cause to bind Arot over for trial in the district court, but the parties did not argue this to the district court or here on appeal. I agree that the district court should be affirmed under the standard argued.

[¶ 28] DALE V. SANDSTROM